| | | |
|---|---|---|
| Martin S. McKay, | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | CASE NO. - 1:15-CV-224 |
| | * | |
| Mark Goins, | * | Judge - Mattice |
|    Coordinator of Elections | * | |
|    State of Tennessee, | * | |
| | * | |
| Tre Hargett, | * | |
|    Secretary of State | * | FILED |
|    State of Tennessee, | * | |
| | * | OCT 13 2015 |
| Kerry B. Steelman, | * | |
|    Administrator of Elections | * | Clerk, U. S. District Court |
|    Hamilton County, Tennessee, | * | Eastern District of Tennessee |
| | * | At Chattanooga |
| **Defendants** | * | |
| | * | |

*******************************************************************************

## Plaintiff's Response To Defendant's Motion To Dismiss

Defendants have ably presented the case for why the instant matter should be dismissed ... from their perspective. However, plaintiff will bring to the Court's attention that there are <u>*exceptions*</u> to the doctrine of *res judicata*, which plaintiff believes apply in this situation.

### Standard Of Review

Plaintiff agrees with defendants on the applicable standard of review outlined in *Kane v. Magna Mixer Co.*, 71 F.3d 555; 1.) a final judgment on the merits of the earlier action, 2.)

identity of the party's or privies in the two suits, and 3.) identity of the cause of action in both the earlier and later suits. Plaintiff agrees with defendants as to elements 1 and 2, that there was a final judgment on the merits as defined by legal definitions, as well as the identity of the parties or privies to the earlier and later action. However, plaintiff asserts that there are exceptions to the identity of the causes of action which apply to this situation, as outlined herein.

## *Transactional Exception*

Generally speaking, to evaluate an exception to the identity of causes element in the *res judicata* defense, a "transactional approach" is employed for determination of this question, see *Satterfield v. Olsten Kimberly Quality Care*, 2000 U.S. App. LEXIS 1147 (10th Circuit 2000), quoting the *Restatement (Second) of Judgments*, § 24, in pertinent part, as follows:

> "A final judgment extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of transactions, out of which the action arose. What constitutes a "transaction" or a "series " is to be determined pragmatically considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit."

The Federal Courts have, generally speaking, adopted the "transactional approach" for evaluation of an exception to a *res judicata* affirmative defense, as regards the identity of causes of action, see *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988) quoted in *Plotner v. AT&T Corp.*, 224 F.3d 1161 (10th Cir. 2000); *Manego v. Orleans Bd. Of Trade*, 773 F.2d 1, 5 (1st Cir.1985); *Headwaters, Inc., et al v. U.S. Forest Service*, 399 F.3d 1047 (9th Cir. 2005); and *In Re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319 (5th

Circuit 2007). In *Headwaters*, the 9th Circuit indicates that the most important element in this analysis is "whether the two suits arise out of the same transactional nucleus of facts".

As noted in paragraph 11 of the complaint, plaintiff was curious how the courts had utilized the holdings in *McKay v. Thompson*. Plaintiff was curious due to the possibility of relocation to another state and sought to consider what states may be appropriate for relocation.

Plaintiff will point out to the Court that in the instant matter there has been a total of 15 years between the present suit and the first suit, *McKay v. Thompson*. This time span clearly indicates that plaintiff accepted the finality of the final judgment rendered in *McKay v. Thompson*, as there has been no litigation about this matter in the intervening years. Further, when the first suit was brought, plaintiff had just relocated to Tennessee from Louisiana ... whereas, the present suit is brought by plaintiff as a result of considering relocation *from* Tennessee, to another state.

Plaintiff will point out that he waited 10 months between October, 2013, and August, 2014, before he made contact with the defendants about the matter. Further, upon receiving defendant *Goins* letter in November, 2014, advising that the *State of Tennessee* would not change it's position in light of the *Schwier* case by the *Eleventh Circuit*, *Schwier v. Cox*, 340 F.3d 1284, 1295 (11th Circuit 2003), plaintiff waited another 9 months, from November, 2014 to August, 2015, before the second suit was initiated.

The fact that plaintiff provided the defendant's with the information pertaining to the

*Schwier* decision in August, 2014, and October, 2014, respectively ... and the fact that they know what Congressional intent is ... namely, that certain items of information which are not "material" in determining a person's qualifications to vote are prohibited by public policy and U.S. statute ... serves as the motivation for plaintiff in this second suit. This is because the defendant's have shown willful disregard for Federal law and Congressional intent by continuing to require the items of information which plaintiff has identified in the Complaint. Plaintiff's motive in filing this second suit is different from the motive for filing the first suit in *McKay v. Thompson*, which was simply to protect his individual right to register to vote. As stated, the motive for the second suit is due to the non-compliance and intransigence of the defendant's regardless of Congressional intent and Federal statutory requirements. The second suit was filed in an effort to protect the public interest, because the defendant's certainly will not do so.

This is evidenced by the fact that plaintiff waited 9 months between the time of receiving defendant's letter in November, 2014, and the filing of this Complaint. Plaintiff did not want to file this second suit. If plaintiff wanted simply to vindicate his individual right to register to vote, this second suit would have been initiated in December, 2014, directly after receiving defendant *Goins* letter. However, in the final analysis, it came down to a recognition that the defendant's simply don't care what Federal law requires, nor about the Congressional intent pertaining to this issue.

These facts demonstrate that the motivation for looking up the *McKay v. Thompson* decision in October, 2013, was not in an effort to reinstitute litigation with the *State of*

*Tennessee*, rather it was related to where plaintiff might possibly relocate. It is clear that there has been no litigation in this matter for 15 years and that the two suits are not a result of the same set of operative facts. Therefore, it is clearly demonstrated that there is no relation in "time, space, origin, or motivation", and that they do not "form a convenient trial unit", between the two suits.

It is clear that the transactional analysis in the instant matter supports plaintiff's contention that there is a valid exception to the *res judicata* defense, as it pertains to the identity of the causes of action, because the causes of action are clearly not the same.

## Public Policy Exception

As the *Sixth Circuit* has stated, "neither collateral estoppel nor res judicata is to be rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice", *Westwood Chemical Co., Inc., v. Kulik*, 656 F.2d 1224, 1228 (6th Circuit 1981). In light of the exceptions to *res judicata*, plaintiff submits that there is no more urgent issue of public policy than the foundational right to register to vote, and thus the fundamental right to vote. The public policy at issue here is stated rather succinctly in the *Schwier* case, because the House Judiciary Committee's report documenting Congressional intent was "to provide means of <u>further</u> securing and protecting the civil rights of persons …", see *Schwier* at 1295.

From these statements it is clear what Congress intended, that items of information which are not "material" in determining an individual's qualifications to vote, are illegal to

require on a voter registration application. The defendant's have clearly shown that they don't care about the requirements of Federal law, and remain in continuing non-compliance with the Civil Rights Act of 1964. They will invoke any defense mechanism available in an effort to perpetuate their illegal activity and which also contravenes an overriding public policy interest.

Plaintiff points out that the letter he received from defendant *Goins* in November, 2014, is similar to the defendant's *Memorandum of Law* which supports the *Motion To Dismiss*. The defendant's clearly state that this Court "is not bound" by the *Schwier* decision ... this says it all ... the defendant's simply don't care about Congressional intent and Federal statutory requirements; as opposed to possibly exploring what alternatives there may be to bring them into compliance. It is this attitude which lies at the heart of plaintiff's motivation to initiate this second suit, because the arbitrary disregard for Federal requirements is an issue of utmost importance pertaining to public policy.

Finally, in *Angel v. Bullington*, 330 U.S. 183 (1947) at 203, the *U.S. Supreme Court* said that "res *judicata* is a generally sound but by no means unlimited policy of judicial action". As stated in *Westwood*, *res judicata* is to be qualified or rejected when it's application would contravene an overriding public policy. Plaintiff has clearly demonstrated that this is an issue of overriding public policy, and as such, the exception to the defense of *res judicata* in the instant matter should be recognized by this Court.

## Defendant's Misconstrue Plaintiff's Complaint

Defendant's argue that plaintiff seeks to re-litigate the facts and issues from the first suit

in *McKay v. Thompson* (see defendant's memorandum of law ... p. 7, paragraph 2) which makes reference to the Complaint (paragraph 10). Defendant's have clearly not read the complaint, or, have failed to understand it. Plaintiff has provided information concerning the prior litigation in paragraphs 1 and 10 of the complaint, simply because if he hadn't then the accusation would be made of intentionally withholding information from the Court. Plaintiff simply offered some observations of fact in paragraph 10, which he is allowed to do.

However, in all three counts of the Complaint, plaintiff did not allege paragraphs 1 and 10; rather, paragraphs 2 through 9 and 11 through 12 were alleged. In Count 1 of the Complaint, plaintiff did make reference to paragraph 10, only so it would serve to illustrate that there is more than "a legally cognizable cause of action", *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Circuit 2007), because this Court found in *McKay v. Thompson*, that the SSN was not material in determining qualifications to register to vote, just as the *Eleventh Circuit* held in *Schwier*. This was simply to ask the Court to take judicial notice of that fact in determining whether the Complaint stated "a claim for which relief can be granted" and to "show entitlement to relief". It was not alleged, and therefore, demonstrates that plaintiff does not seek to re-litigate the facts and issues in *McKay v. Thompson*.

Clearly, in light of the exceptions to the *res judicata* doctrine which are applicable in this situation ... there is a stated claim for which relief can be granted, it is more than a legally cognizable cause of action, and entitlement to relief has been shown.

**Final Judgment In *McKay v. Thompson* No Longer Equitable**

The judgment in *McKay v. Thompson* was rendered by the *Sixth Circuit* in 2000, while being a final judgment in itself, Fed. R. Civ. P. 60(b)(5) provides for relief from such a judgment where "applying it prospectively is no longer equitable". Prospective application of this judgment is not equitable to either plaintiff individually, or, to the general public because the defendant's have clearly shown their disregard for Federal statutory requirements.

In the case of *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin*, 769 F.3d 543 (7th Circuit 2014), an action to vacate a final judgment from 23 years prior was upheld in the case because "in the case of regulatory decrees ... often the passage of time renders them obsolete, so that the case for modification or rescission actually grows with time". See *Lac Courte* at 548, citing Horne v. Flores, 557 U.S. 433 (2009). Thus, the *United States Supreme Court* recognizes that some matters of public policy are of such exceptional importance that equitable relief may be granted. Such is the case with the instant matter, the final judgment in *McKay v. Thompson* was rendered 15 years ago and the matter has become stale in light of the *Schwier* decision by the *Eleventh Circuit*. The status of the *McKay v. Thompson* decision is illustrative of precisely the same type of situation as *Lac Courte*, a judgment rendered years ago becomes inequitable in it's present day application simply due to changes in the landscape of the environment and culture which has evolved over time.

While the defendant's in the instant matter are the privies of the defendant's in *McKay v. Thompson*, their actions in the present day highlight the glaring disregard for Federal

statutory requirements, and thus, obviate the need for equitable relief.

### Gross Negligence By Plaintiff Attorney In *McKay v. Thompson*

Fed. R. Civ. P. 60(b)(6) provides for relief from a final judgment for "any other reason that justifies relief". In the case of *Carter v. Albert Einstein Medical Center*, 804 F.2d 805 (3rd Circuit 1986), the attorney representing a litigant demonstrated gross negligence to the 3rd *Circuit* panel by what they saw, or otherwise failed to see, appear in the record from the trial court. The attorney of record apparently took no action on several matters and did not file pleadings with the court even when ordered specifically to do so. The 3rd *Circuit* held that in a case of such gross negligence the client should not bear the responsibility, so they vacated the trial court's dismissal in the matter and remanded for further proceedings.

During the discovery phase of *McKay v. Thompson*, plaintiff's attorney was grossly negligent in his performance. Plaintiff ended up taking over the case on appeal as a *Pro Se* litigant, however, was not able to recover from the damage that had been done after issuance of the summary judgment. Plaintiff's attorney was publicly censured for his conduct in the case, subsequently his licensed was suspended in 2009 after additional complaints, and was ultimately disbarred in 2011. A copy of the Tennessee Board Of Professional Responsibility ("BOPR") detail of disciplinary history, censure, suspension and disbarment announcements are attached. Plaintiff's attorney was ultimately disbarred for many reasons, including Competence, Diligence, Communication, truthfulness & candor in statements to others and misconduct ... all of these issues were elements in the gross negligence perpetrated upon

plaintiff.

Similar to the situation in *Carter*, plaintiff's attorney in *McKay v. Thompson* was under an order by the Court (a scheduling order) to perform and meet certain deadlines, but failed to do so. Plaintiff discussed the case with counsel during the discovery phase and was advised that "it is progressing". Then unexpectedly, plaintiff received a copy of the summary judgment and assumed responsibility for litigation from that point.

The elements which the 3rd *Circuit* cites for consideration in such a situation are, 1.) the extent of the party's personal responsibility, 2.) a history of dilatoriness, 3.) whether the attorney's conduct was willful and in bad faith; and 4.) the meritoriousness of the claim.

As to the first element, plaintiff told counsel several times that he was willing to do whatever he could to assist in the discovery and trial preparation phases, but was never utilized or informed about the litigation, even though the question was asked of counsel many times. For the second element, plaintiff became aware through the complaint process with the Tennessee Bar, that his attorney had other previous complaints. Further, the complaints afterward and subsequent disbarment evidence the history of dilatoriness. For the third element, plaintiff was advised that the case "was progressing", but the attorney made no effort to appropriately prosecute the matter. Thus, the attorney's conduct was obviously willful and in bad faith. For the fourth element, plaintiff can think of no other fact to evidence the claim of gross negligence, other than the attorney was publicly censured and eventually disbarred.

Ultimately in *Carter*, the 3rd *Circuit* concluded that ...

"Not only the court, but the client, was treated unfairly by the lawyer, plaintiff should not shoulder the burden of this incompetence alone. We conclude that the complaint in this case should be reinstated ..." See *Carter* at 808.

## Conclusion

In light of the exceptions to the doctrine of *res judicata* outlined herein, as well as the exceptions outlined pertaining to Fed. R. Civ. P. 60(b), plaintiff requests that the Court recognize the limitations of *res judicata* in the instant matter ... primarily, that it is not an absolute bar for this second suit by plaintiff, and sustain this action.

Respectfully submitted,

*Martin S. McKay*
Martin S. McKay
P. O. Box 16006
Chattanooga, TN 37416
(423) 580-6876

## Certificate of Service

I certify that a true and correct copy of the foregoing has been served upon the following person, Counsel for defendants, by U.S. Mail, postage prepaid, on this 12th day of October, 2015.

Ms. Janet M. Kleinfelter, Deputy Attorney General
State of Tennessee
Public Interest Division
Office of Attorney General
P. O. Box 20207
Nashville, TN 37202
　　　(615) 741-7403

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　*Martin S. McKay*
　　　　　　　　　　　　　　　　Martin S. McKay
　　　　　　　　　　　　　　　　P. O. Box 16006
　　　　　　　　　　　　　　　　Chattanooga, TN 37416
　　　　　　　　　　　　　　　　(423) 580-6876



**Board of Professional Responsibility**
of the Supreme Court of Tennessee



About The Board
Information for Consumers
Information for Attorneys
News & Publications
Consumer Assistance Program
Find a Lawyer
Links of Interest



## Attorney Details

**Jes Beard**

PO BOX 1787
CHATSWORTH, GA 30705-1787
BPR Number: 014170
Status: Disbarred
Office County: MURRAY
Licensed in TN Since: 1990
Law School: UNIV SAN DIEGO

Other States in which the Attorney is Licensed:
**(No Additional States Found)**

Informational Releases for Public Discipline (distinguished by blue links on the date):

| Date | Title |
|---|---|
| 03/09/2011 | Chattanooga Lawyer Disbarred |
| 03/03/2011 | Disbarred |
| 12/30/2010 | Chancery Court Decision - #2008-1746-3(C)-RS; 2009-1798-3-RS |
| 03/23/2010 | Hearing Panel Judgment - #2008-1746-3(C)-RS; 2009-1798-3-RS |
| 07/13/2009 | Chattanooga Lawyer Suspended |
| 07/09/2009 | Supreme Court Decision - #2003-1405-3(C)-JV |
| 07/09/2009 | Suspended two years effective 7/19/09 |
| 01/02/2009 | Petition for Discipline filed (RS). |
| 08/11/2008 | Chancery Court Decision - #2003-1405-3(C)-JV |
| 04/01/2008 | Petition for Discipline filed (RS). |
| 09/11/2007 | Petition for 4.3 Temporary Suspension withdrawn (J |
| 09/10/2007 | Petition for 4.3 Temporary Suspension filed (JV). |
| 05/30/2007 | Hearing Panel Judgment - #2003-1405-3(C)-JV |
| 06/30/2003 | Chattanooga Lawyer Censured |
| 12/11/2002 | Chattanooga Lawyer Censured |
| 08/22/2000 | Release of Information RE: Jes Beard |

Names Used:

| Name |
|---|
| Jes Beard |

[Search Again]

\* Information accurate as of Monday, October 12, 2015 2:12 PM


# BOARD OF PROFESSIONAL RESPONSIBILITY
of the
## SUPREME COURT OF TENNESSEE

LANCE B. BRACY
CHIEF DISCIPLINARY COUNSEL

LAURA L. CHASTAIN
DEPUTY CHIEF DISCIPLINARY COUNSEL

BEVERLY P. SHARPE
CONSUMER COUNSEL/DIRECTOR

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
E-MAIL: ethics@tbpr.org

WILLIAM W. HUNT, III
CHARLES A. HIGH
SANDY GARRETT
JESSE D. JOSEPH
JAMES A. VICK
THERESA M. COSTONIS
DISCIPLINARY COUNSEL

**RELEASE OF INFORMATION**
**RE: JES BEARD, BPR # 14170**
**CONTACT: JAMES A. VICK**
**BOARD OF PROFESSIONAL RESPONSIBILITY**

December 11, 2002

## CHATTANOOGA LAWYER CENSURED

Jes Beard, a Chattanooga attorney, received a Public Censure from the Board of Professional Responsibility on December 4, 2002. Pursuant to an agreement entered into between Mr. Beard and the Board of Professional Responsibility to resolve a pending Petition for Discipline, Mr. Beard agreed to accept a Public Censure.

Mr. Beard represented a client in a suit in the United States District Court for the Eastern District of Tennessee attacking the requirement that an individual disclose his Social Security Number as a condition to registering to vote. Mr. Beard agreed to accept a Public Censure for his failing to pursue formal discovery and/or take sufficient action to prosecute his client's case and failing, without consultation with or agreement of his client, to file a response to or appear for argument on a Motion for Summary Judgment. The client's case was dismissed by the court. Mr. Beard admitted his guilt of violating the Disciplinary Rules of the Code of Professional Responsibility, DR 7-101(A)(1)(2)(3)(4).

A Public Censure is a form of public discipline which declares the conduct of the lawyer improper but does not limit the lawyer's right to practice.

Beard 1290 rel.doc



# BOARD OF PROFESSIONAL RESPONSIBILITY
## OF THE
# SUPREME COURT OF TENNESSEE

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
E-MAIL: ethics@tbpr.org
Website: www.tbpr.org

**RELEASE OF INFORMATION**
**RE: JES BEARD, BPR# 14170**
**CONTACT: RANDALL J. SPIVEY**
**BOARD OF PROFESSIONAL RESPONSIBILITY**
**615-361-7500**

July 13, 2009

### CHATTANOOGA LAWYER SUSPENDED

On July 9, 2009, Jes Beard of Chattanooga, Tennessee, was suspended by the Tennessee Supreme Court for a period of two (2) years pursuant to Rule 9, Section 4.2, of the Rules of the Supreme Court. The Supreme Court affirmed the ruling of a hearing panel imposing a two (2) year suspension for each of three Petitions for Discipline filed against Mr. Beard with each suspension to run concurrently.

Mr. Beard violated disciplinary rules by failing to properly draw a Final Decree, by giving advice to his client to settle for $10,000 without first reading the Memorandum Opinion which the court had already rendered and which was in Mr. Beard's possession, and by filing false pleadings and a false affidavit of his client. Mr. Beard's actions violated Disciplinary Rules of the former Code of Professional Responsibility DR 1-102(A)(1)(4)(5)(6) and DR 7-102(A)(1)(3)(5)(8) and Tennessee Supreme Court Rule 8, Rules of Professional Conduct 1.1 (Competence), 1.2(a) (Scope of the Representation and the Allocation of Authority Between the Lawyer and Client), 1.3 (Diligence), 1.4 (Communication), 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.3(a)(1)(b)(c)(d) (Candor Toward the Tribunal), 3.4(b) (Fairness to Opposing Party and Counsel), 4.1(a) (Truthfulness and Candor in Statements to Others) and 8.4(a)(c)(d) (Misconduct).

Mr. Beard was furthered ordered to pay the expenses and costs of the disciplinary proceedings against him, pursuant to Rule 9, Section 4.7, of the Rules of the Supreme Court and fully comply in all respects with the requirements and obligations of suspended attorneys as set forth in Rule 9, Section 18.1 of the Rules of the Supreme Court.

Beard 1405-3 rel.doc

**PLEASE NOTE**
**YOU MAY SUBSCRIBE TO RECEIVE INFORMATIONAL RELEASES, FORMAL ETHICS OPINIONS, NEWSLETTERS AND ANNUAL REPORTS ELECTRONICALLY BY SIGNING IN AT THE BOARD'S WEBSITE**
www.tbpr.org/Subscriptions



# BOARD OF PROFESSIONAL RESPONSIBILITY
## OF THE
## SUPREME COURT OF TENNESSEE

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
E-MAIL: ethics@tbpr.org
Website: www.tbpr.org

**RELEASE OF INFORMATION**
**RE: JES BEARD, BPR# 14170**
**CONTACT: RANDALL J. SPIVEY**
**BOARD OF PROFESSIONAL RESPONSIBILITY**
**615-361-7500**

March 9, 2011

### CHATTANOOGA LAWYER DISBARRED

On March 3, 2011, Jes Beard of Chattanooga, Tennessee, was disbarred by the Tennessee Supreme Court pursuant to Rule 9, Section 4.1, of the Rules of the Supreme Court.

Mr. Beard violated disciplinary rules by ignoring conflicts of interest between clients, by taking action to the detriment of one client in order to gain an advantage for another client, by improperly communicating with a person represented by another lawyer, by failing to competently and diligently represent his clients, and by failing to properly communicate the status of a case to a client. Mr. Beard also continually failed to respond to disciplinary counsel. Mr. Beard's actions violated Tennessee Supreme Court Rule 8, Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.7(a) (Conflict of Interest: General Rule), 3.2 (Expediting Litigation), 3.3(a) (Candor Toward the Tribunal), 4.1(Truthfulness and Candor in Statements to Others), 4.2 (Communication With a Person represented by Counsel) and 8.4 (Misconduct).

Mr. Beard was furthered ordered to pay the expenses and costs of the disciplinary proceedings against him, pursuant to Rule 9, Section 24.3, of the Rules of the Supreme Court, and fully comply in all respects with the requirements and obligations of disbarred attorneys as set forth in Rule 9, Section 18.1 of the Rules of the Supreme Court.

Beard 1746-3; 1798-3 rel.doc

**PLEASE NOTE**
**YOU MAY SUBSCRIBE TO RECEIVE INFORMATIONAL RELEASES, FORMAL ETHICS OPINIONS, NEWSLETTERS AND ANNUAL REPORTS ELECTRONICALLY BY SIGNING IN AT THE BOARD'S WEBSITE**

www.tbpr.org/Subscriptions