UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| MARTIN S. MCKAY, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| | ) | Case No. 1:15-cv-224 |
| v. | ) | |
| | ) | Judge Mattice |
| MARK GOINS, *et al.*, | ) | |
| *Defendants.* | ) | |

## **ORDER**

Before the Court is Defendant's Motion to Dismiss (Doc. 3) and Plaintiff's "Motion for Ruling on Private Right of Action" (Doc. 15). For the reasons set forth herein, the Court will **GRANT** Defendant's Motion and will **DENY AS MOOT** Plaintiff's Motion.

## I. BACKGROUND

On August 27, 2015, Plaintiff initiated this action by filing a *pro se* Complaint in this Court against "Mark Goins, Coordinator of Elections State of Tennessee," "Tre Hargett, Secretary of State State of Tennessee," and "Kerry B. Steelman, Administrator of Elections Hamilton County, Tennessee." (Doc. 1). According to Plaintiff's Complaint, he previously sought to enjoin these and similar Defendants "from requiring a Social Security Number ('SSN') as a pre-requisite to register to vote in Tennessee," in two lawsuits filed in 1998 and 2000, respectively. (*Id.* at 1-2). Plaintiff did not prevail in either action, in either the district court or the United States Court of Appeals for the Sixth Circuit.[1] (*Id.*). Plaintiff contends that, in 2003, the United States Court of Appeals

---

[1] *See McKay v. Thompson*, 226 F.3d 752 (6th Cir. 2000); *McKay v. Darnell, et al.*, E.D. Tenn. Case No. 1:00-cv-378.

for the Eleventh Circuit reached an "entirely different conclusion" than the Sixth Circuit on the substantive issue raised in his previous actions, holding that citizens have a private right of action to enforce voting laws.[2] (*Id.* at 2). Plaintiff contends that this action is brought, pursuant to 42 U.S.C. § 1983, the federal Civil Rights Act, and 52 U.S.C. § 10101(a)(2)(B), the federal Voting Rights Act, "to enable the Courts of the Sixth Circuit to review the holdings of the Eleventh Circuit[.]"[3] (*Id.* at 2-3) (emphasis omitted).

Plaintiff further alleges that, after he learned that the Eleventh Circuit had affirmed both a private right of action to enforce voting laws and a decision finding that SSNs are not "material" to determining an applicant's qualifications to vote, he attempted to register to vote in Hamilton County, Tennessee. (*Id.* at 6). Plaintiff states that he spoke with Defendant Steelman on August 29, 2014, made Steelman aware of the law of the Eleventh Circuit, and attempted to register to vote without providing his SSN. (*Id.* at 6-7). However, Plaintiff did not hear back from Steelman. (*Id.* at 7). Accordingly, on October 3, 2014, Plaintiff sent a letter to Defendants Goins and Hargett, complaining that he had been unlawfully precluded from registering to vote for not providing his SSN. (*Id.*). Plaintiff received a response from Goins, dated November 24, 2014, "indicating that they had reviewed the legal situation and essentially concluded that [the Eleventh Circuit's decision] was not applicable to Tennessee." (*Id.*). On December 9, 2014, Plaintiff received notice from the Hamilton County Election Commission that his application to register to vote was incomplete. (*Id.*). Plaintiff thus

---

[2] *See Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003).

[3] Plaintiff notes that 52 U.S.C. § 10101 was enacted in 2014, but concedes that it merely recodified the Voting Rights Act, previously codified at 42 U.S.C. § 1971. (Doc. 1 at 3 n.1).

2

contends that Defendants violated his right to register to vote in denying his application for failure to provide a SSN. (*Id.* at 8).

## II. MOTION TO DISMISS

Defendants thereafter filed the instant Motion to Dismiss. (Doc. 3). In that Motion and its supporting Memorandum, Defendants argue that Plaintiff's action is barred by the doctrine of res judicata, as there was a final judgment on the merits, an identity of the causes of action, and an identity of the parties between the instant case and Plaintiff's previous actions. (Docs. 3-4).

In response, Plaintiff argues that it is appropriate to apply one of the exceptions to the res judicata preclusion in the instant case. (Doc. 11). First, he argues that there is no identity in the causes of action between the two cases, as they are separated by a span of more than 15 years and as his motivations for bringing the two suits were distinct. (*Id.* at 2-5). Next, he argues that public policy considerations should overrule the application of res judicata in this case, as voting is a fundamental right and as Defendants have continued to willfully violate intent of the Voting Rights Act. (*Id.* at 5-6).

In reply, Defendants argue that res judicata bars Plaintiff's claims under the "logical relationship" test, as the two actions raise largely the same issues of law and fact. (Doc. 14 at 2-3). Defendants also argue that the public policy exception to res judicata is not applicable in this case, as Plaintiff's claims that Defendants are violating the law are subjective and contrary to binding precedent in this Circuit. (*Id.* at 3-4). They further argue that there is no equitable exception to the doctrine of res judicata, and that Plaintiff's claims under Rule 60 are grossly untimely. (*Id.* at 4-5).

3

### A. Standard of Law

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is not a challenge to the plaintiff's factual allegations, but rather, is a "test of the plaintiff's cause of action as stated in the complaint." *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 556 (2007)). To survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

The Court notes that Plaintiff is proceeding in this action *pro se*. The Court is mindful that *pro se* complaints are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys. *Bridge v. Ocwen Fed. Bank,* 681 F.3d 355, 358 (6th Cir. 2012). The Court is "not, [however,] require[d] to either guess the nature of or create a litigant's claim." *See, e.g., Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006). Likewise, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law," and ultimately, those who proceed without counsel must still comply with the procedural rules that govern civil cases, including the pleading standards set forth in Fed. R. Civ. P. 8(a). *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006); *Whitson v. Union Boiler Co.*, 47 F. App'x 757, 759 (6th Cir. 2002); *Kafele v. Lerner, Sampson, Rothfuss, L.P.A.*, 161 F.

4

App'x 487, 491 (6th Cir. 2005) ("[P]*ro se* litigants are not relieved of the duty to develop claims with an appropriate degree of specificity."). Thus, although the standard of review for *pro se* litigants is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

### B. Res Judicata

"The fundamental function of the doctrine of res judicata is to prevent the parties and their privies from relitigating in a subsequent proceeding a controversy or issue already decided by a prior valid judgment and from litigating piecemeal the same controversy. The doctrine's objective is to give finality to prior judgments and put an end to litigation." *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1229 (6th Cir. 1981). Res judicata is itself an affirmative defense, and the party urging it carries the burden of proof with respect to factual contentions that underlie the defense. *See Howard v. Green*, 555 F.2d 178, 181 (8th Cir. 1977).

The doctrine, also known as the law of prior judgments, consists of two related concepts: claim preclusion and issue preclusion. *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 n.5 (1998); *Smith v. Dawson-Smith*, 111 Fed. App'x 360, 362 (6th Cir. 2004).

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

*New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). Claim preclusion consists of four elements: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior

5

action; and (4) an identity of the causes of actions." *Doe ex rel. Doe v. Jackson Local Schools School Dist.*, 422 F. App'x 497, 500 (6th Cir. 2011) (citations and internal quotation marks omitted); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (internal quotation marks omitted). "For issue preclusion to bar subsequent litigation, the issue raised in the second case must have been raised, actually litigated and decided, and necessary to the court's judgment in the first case."[4] *Vincent v. Warren Cnty., Ky*, --- F. App'x ----, 2015 WL 6517099, at *4 (6th Cir. Oct. 28, 2015).

Although they do not expressly state as much, the majority of the parties' arguments relate to the doctrine of claim preclusion. Plaintiff does not dispute that his prior case resulted in a final judgment on the merits or that there is an identity of interest between the parties in that action and the instant case. (Doc. 11 at 2). Plaintiff instead argues that there is not an identity between the causes of action in the two cases due to the fact that they arose from different "transactional" facts over 15 years apart and due to his unique motivations for pursuing the two actions. (*Id.* at 2-5).

However, even if the Court were to credit Plaintiff's argument and find that there was not an identity between the two causes of action, Plaintiff's claims would nonetheless be barred by the doctrine of issue preclusion. In *McKay v. Thompson*, 226 F.3d 752 (6th Cir. 2000), the Court considered, and rejected, Plaintiff's claim arising under the Voting Rights Act, finding that Plaintiff lacked standing to pursue such a claim; it also rejected Plaintiff's claims arising under § 1983 on the merits.[5] In the

---

[4] The concept of issue preclusion is also sometimes referred to as "collateral estoppel." *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 893 n.5 (2008).

[5] Plaintiff brought several specific constitutional challenges in his prior action, alleging that the SSN requirement burdened his fundamental right to vote, violated his First Amendment right to free exercise of religion, violated the Privileges and Immunities Clause of Article IV, and violated concepts of

6

instant action, Plaintiff again seeks to raise challenges to Tennessee's requirement that a SSN be provided in order to register to vote, alleging that the requirement violates both § 1983 and the Voting Rights Act.  Because these exact legal issues were "raised, actually litigated and decided, and necessary to the court's judgment in the first case," they are barred by the doctrine of issue preclusion.

Plaintiff alternatively argues that the public policy exception to the doctrine of res judicata should be applied in this case because "there is no more urgent issue of public policy than the foundational right to register to vote."  (Doc. 11 at 5-6).  The Court first notes that "[t]he public policy and manifest injustice to a party exceptions to applying the doctrine of res judicata have been recognized sparingly and only under the most urgent circumstances."  *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1332 (1981).  Although the Court agrees that the right to vote is a fundamental one, it does not believe that any urgent circumstances have been demonstrated to warrant application of the public policy exception in the instant case.

Moreover, Plaintiff's public policy argument is primarily based upon his view that Tennessee election officials are violating the law in light of the Eleventh Circuit's decision in *Schwier*.  The Court is sympathetic to Plaintiff's position and cognizant of the fact that, since Plaintiff's prior action, a split has emerged amongst federal courts as to the issues of whether a potential voter has standing to enforce the provisions of the Voting Rights Act through a private action and as to whether it is unlawful for a state to require residents to provide a SSN in order to register to vote.  However, *McKay v. Thompson* is still good law in this Circuit, having not been overturned or questioned by

---

procedural due process.  *McKay*, 226 F.3d at 756-57.  Each argument was considered and rejected on the merits by a panel of the Sixth Circuit.  *Id.*

7

the United States Supreme Court or by another panel of the Sixth Circuit. The Court is thus bound by that ruling and simply cannot find that Tennessee officials are violating the law or fundamental public policy doctrines in not following a contrary, but non-binding decision from another Circuit. For these same reasons, even if the Court were to apply the public policy exception to prevent dismissal of Plaintiff's case under the doctrine of res judicata, it would have no effect on the results of this action, as the Court would still be required to dismiss Plaintiff's action for failure to state a plausible claim for relief under binding Sixth Circuit precedent. Accordingly, the Court finds that it is not appropriate to apply the sparingly-used public policy exception in this action, concludes that Plaintiff's claims are barred by the doctrine of res judicata, and will grant Defendants' Motion to Dismiss.

### c. Rule 60 Challenge

In his response to Defendants' Motion to Dismiss, Plaintiff alternatively argues that, pursuant to Federal Rule of Civil Procedure 60(b)(5), prospective application of the judgment in his 1998 case is no longer equitable. (*Id.* at 8-9). He also argues that, pursuant to Rule 60(b)(6), relief from judgment is warranted due to gross negligence by counsel – who Plaintiff alleges was later censured for his conduct in the case and ultimately disbarred after additional complaints – during the discovery phase. (*Id.* at 9-11).

Rule 60(b) provides various grounds that allow district courts, on just terms, to "relieve a party or its legal representative from a final judgment." The Court finds it inappropriate to consider Plaintiff's arguments under Rule 60(b) in this separate case. If Plaintiff wishes to file such a motion, he must do so in the action in which the judgment he seeks to be relieved from was entered.

8

Nonetheless, Rule 60 does contain a "savings clause," which provides that nothing in the Rule "limit[s] a court's power to entertain an independent action to relieve a party from judgment, order or proceeding." Fed. R. Civ. P. 60(d)(1). Accordingly, mindful of Plaintiff's *pro se* status, this Court may nonetheless consider Plaintiff's arguments under the "independent action" clause of Rule 60. *See Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011) ("[A]n independent action for relief may be treated as a 60(b) motion, and conversely, a 60(b) motion may be treated as the institution of an independent action."). However, relief in such an independent action is "available only to prevent a grave miscarriage of justice" and only in "cases of unusual and exceptional circumstances." *Id.* at 595-96 (collecting cases).

As previously discussed, Plaintiff's claims are barred by the doctrine of res judicata and are meritless in light of current, binding precedent from the Sixth Circuit. Although Plaintiff undoubtedly has a valid argument for an extension or modification of existing precedent in light of subsequent cases arising in other courts, a grave miscarriage of justice will not occur if he is not permitted to raise those arguments. The Court thus finds insufficient "unusual and exceptional circumstances" warranting relief pursuant to Rule 60(d).

### III. PLAINTIFF'S MOTION

Plaintiff has also filed a "Motion for Ruling on Private Right of Action" (Doc. 15), wherein Plaintiff "requests that the Court make a ruling on whether the Sixth Circuit will recognize the private right of action outlined in *Schweir*" in order to guide the parties in their discovery in this action.[6] Plaintiff's Motion (Doc. 15) is **DENIED AS MOOT** in

---

[6] The Court notes that it lacks the authority to issue prospective rulings on behalf of the Sixth Circuit Court of Appeals. To the extent that Plaintiff seeks this Court's ruling as to whether a private right of

9

light of the Court's finding that Plaintiff's claims must be dismissed on res judicata grounds.

## IV. CONCLUSION

For the reasons discussed herein, Defendants' Motion to Dismiss (Doc. 3) is hereby **GRANTED**, and Plaintiff's Motion for Ruling on Private Right of Action (Doc. 15) is **DENIED AS MOOT**.

Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**. A separate judgment will enter.

**SO ORDERED** this 5th day of February, 2016.

                                              */s/ Harry S. Mattice, Jr.*
                                              HARRY S. MATTICE, JR.
                                              UNITED STATES DISTRICT JUDGE

---

action exists to raise challenges to the Voting Rights Act, the Court notes once again that it is bound by the Sixth Circuit's decision in *McKay*, which held that no such private right of action exists.

10